# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-0777V
UNPUBLISHED

| | |
|---|---|
| LISA BLACK,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: July 12, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On June 25, 2020, Lisa Black filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine that was administered on October 16, 2018. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons set forth below, and pursuant to my oral ruling on July 8, 2020 (which is fully adopted herein), I find that Petitioner is entitled to damages in the amount **$75,000.00**, **representing total compensation for actual pain and suffering.**

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

## I. Relevant Procedural History

After the claim's initiation, the parties spent some time attempting to resolve the matter. Petitioner later filed a Motion for Ruling on Record and Brief in support of Damages ("Motion") in August 2021, arguing that she had established entitlement to compensation for her SIRVA, and requesting $95,000.00 for actual pain and suffering. ECF No. 24. Shortly thereafter, on August 20, 2021, Respondent filed a status report indicating that a proffer for damages had been transmitted to Petitioner. ECF No. 25.

The parties' subsequent attempts to informally resolve damages came to an end only three days later, on August 23, 2021. *See* Informal Communication entered August 30, 3021. The parties agreed that although Respondent would proceed with filing a Rule 4(c) Report conceding entitlement, their dispute regarding damages should ultimately be decided by me. Joint Status Report, filed August 31, 2022. ECF No. 26.

Thus, Respondent filed his Rule 4(c) Report on September 27, 2021 conceding entitlement, and I thereafter ruled on that matter in Petitioner's favor. ECF No. 28. On November 2, 2021, Respondent filed a damages brief proposing a pain and suffering award of $65,000.00. Respondent's Brief on Damages ("Res. Brief") at 1. ECF No. 29. Petitioner filed her Reply on November 9, 2021. ECF No. 31.

In May of this year, I proposed this case be set for an expedited "Motions Day" hearing, at which time I would decide the issue of damages based on all evidence filed to date and any oral argument from counsel. ECF No. 34. The parties agreed, and the Motions Day hearing took place on July 8, 2022. Minute Entry dated July 11, 2022.

## II. Legal Standard

In several recent decisions, I discussed at length the legal standard to be considered in determining an appropriate award of pain and suffering, as well as prior SIRVA compensation awarded in SPU cases. I fully adopt and hereby incorporate my prior discussion in sections V and VI of the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y*

*of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

Pain and suffering is the sole component requested for damages herein, so only the legal standards bearing on its calculation are relevant. In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on July 8, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the specific circumstances of this case as set forth herein:

- Petitioner received a flu shot in her left shoulder on October 16, 2018, at her workplace. Ex. 1 at 4-5; Ex. 2 at 2. At the time of vaccination, Petitioner was employed as a registered nurse, specializing in adolescent mental health. *See, e.g.*, Ex. 3 at 3; Ex. 7 at 41; Ex. 16 at 4.

- In her affidavit, signed on April 16, 2020, Petitioner avers that "[d]uring the administration of [the] flu shot, I noticed an immediate pain in my shoulder that I had never felt before. The pain and soreness in my left shoulder continued to progress throughout the day to the point that I could not move my left arm properly." Ex. 3 at 3. She further avers that "after a few days of intense pain and discomfort in my left shoulder, my range of motion began to deteriorate." *Id*. Petitioner states that approximately one week after vaccination, she contacted her union representative and "occupational health." *Id*. She was instructed her to make an appointment at the Allina Health Vadnais Heights Clinic. *Id*.

- Petitioner was evaluated by Dr. Paul J. Swan at the Vadnais Heights Clinic for left shoulder pain on October 31, 2018 (fifteen days post-vaccination). Ex. 4 at 225. The record documents Petitioner's report of "intermittent sharp" left shoulder pain since receiving the flu shot. *Id*.  She was instructed to continue taking over the counter medication and to consider physical therapy if her pain persisted. *Id*. at 227. Dr. Swan noted that Petitioner would be able to return to work on November 5, 2018. *Id*. at 230.

3

- Petitioner was next evaluated by Dr. Swan on November 5, 2018 Ex. 4 at 213. The medical note documenting this appointment indicates that she had not been able to return to work as anticipated. *Id.* Nevertheless, Dr. Swan noted that Petitioner would be able to resume working the next day "with no lifting over 10 lbs until 11-12-18." *Id.* at 218.

- Petitioner underwent an initial physical therapy assessment on November 6, 2018. Ex. 11 at 14. It was determined that, "[g]iven her current symptoms, [Petitioner] is unable to work at her full capacity (currently off work), nor is she able to perform all [activities of daily living] and self-cares [sic] due to pain. *Id.* at 15. Petitioner rated her pain as between a three and "7/10" on a ten-point pain scale. *Id.*

- Petitioner presented to P.A. Christine Marie Miskec at Sports and Orthopaedic Specialists on November 14, 2018 for a left shoulder evaluation. Ex. 5 at 40-41. In addition to noting that Petitioner had been provided with work restrictions "due to her need to restrain adolescents when necessary," P.A. Miskec also noted that Petitioner's shoulder pain had "very negatively affected" her ability to sleep. *Id.* It was further noted that Petitioner was "[u]nable to reach in any direction except for across her waist as all those movements increase pain." *Id.* at 41. Petitioner underwent an x-ray and was diagnosed with left shoulder post-traumatic impingement. *Id.* at 42-43. Additionally, she was instructed to abide by numerous weight and activity restrictions. *Id.* at 43.

- On November 21, 2018, Petitioner began physical therapy "to address rotator cuff/scapular weakness, cervical weakness, thoracic and post capsule tightness, posture and proprioceptive deficits" Ex. 6 at 51. Petitioner indicated that her pain ranged from two to nine on a ten-point pain scale. *Id.* at 52.

- Petitioner returned to Sports and Orthopaedic Specialists on December 12, 2018 regarding her left shoulder pain. Ex. 5 at 34-35. Although P.A. Miskec recorded that Petitioner exhibited decreased pain and increased strength and range of motion, she noted that Petitioner "continues to notice increase ache upon waking every morning." *Id.* at 34. It was further noted that Petitioner "[h]as returned to work, albeit in a limited capacity and for limited hours, with no sequale [sic] of symptoms. *Id.* at 35. In addition to instructing Petitioner to continue physical therapy, she was prohibited from interacting with patients at her place of work until her strength increased. *Id.* at 36.

- On January 30, 2019 (over three months post-vaccination), Petitioner's left shoulder was examined by Dr. Daniel Buss, an orthopedist at Sports and Orthopaedic Specialists. Ex. 7 at 41. The medical note documenting this

appointment indicates that Petitioner "report[ed] improvements with [range of motion] as well as strength that are allowing for improved function, specifically with [activities of daily living]. She is continuing to work as an RN on light duty." *Id.* Dr. Buss recommended a continuation of physical therapy and finalization of a home exercise program. *Id.* at 42.

- On March 11, 2019 (almost five months post-vaccination), Petitioner again presented to P.A. Miskec at Sports and Orthopaedic Specialists regarding her left shoulder. Ex. 5 at 22. The note documenting this appointment indicates that Petitioner's condition had regressed "almost to the point it was at her primary visit" and that "[s]leep is becoming negatively affected as is rest in general." *Id.* at 22-23. P.A. Miskec further noted that "if she crosses her arm in repose, she will feel pain along the lateral and anterior shoulder. As well, she feels her range of motion is not necessarily decreased, rather, is painful through points that it was not at her previous visit." *Id.* at 23. Petitioner was administered a cortisone injection. *Id.* at 25.

- Petitioner underwent an MRI of her left shoulder on April 23, 2019. Ex. 8 at 1-2. The findings were "1. Mild supraspinatus and subscapularis tendinosis. No definite full or partial-thickness rotator cuff tearing is seen. 2. Thickening of the capsular structures of the glenohumeral articulation, in keeping with adhesive capsulitis. 3. The glenoid labrum and long head of the biceps tendon appear intact. 4. No injuries to the acromioclavicular joint are present. 5. Mild glenohumeral joint infusion." *Id.* at 2.

- In her affidavit, Petitioner states that approximately four months after her October 16, 2018 flu shot, she remained "unable to do my normal activities" and was working a limited schedule. Ex. 3 at 5. She further states that "I was advised that I needed to start looking for another job within nursing since I could not perform my prior nursing job anymore. After some counseling and job applications, I started a new job as a triage nurse with Allina on May 28, 2019." *Id.*

- Petitioner was discharged from physical therapy on May 3, 2019, after completing eleven sessions. Ex. 6 at 9. Although the assessment indicated that she was doing well, Petitioner "felt like she plateaued." *Id.* at 7.

- Petitioner returned to Dr. Buss for an evaluation of her left shoulder after her MRI on May 13, 2019. Ex. 7 at 24-27. She described her pain as constantly achy with intermittent sharp pain. *Id.* at 25. The medical record further indicates "'popping' in her shoulder that can be painful. . . [p]ain is worse with reaching behind, pushing off/down and reaching out and up with weight and better with rest." *Id.* Dr. Buss

noted that although Petitioner currently worked in adolescent mental health, she "will be changing jobs soon . . . she does not feel she can begin patient care at this time. *Id.*

- Petitioner presented to P.A. Miskec on August 8, 2019 for a follow-up evaluation of her left shoulder. Ex. 5 at 10-13. Petitioner reported "continued improvement in function and decease in pain, with residual discomfort with abduction and when she awakens due to sleeping position." *Id.* at 11. The medical record indicates that Petitioner would no longer be in contact with patients "and is primarily in a desk position, this bodes well for further recovery." *Id.* at 12.

- Petitioner's next appointment with P.A. Miskec occurred on October 2, 2019. Ex. 15 at 85. Although Petitioner noted an increase in strength, she also noted a lack of endurance and requested additional physical therapy and a referral for acupuncture. *Id.*

- Petitioner began acupuncture treatment at Allina Health Woodbury Clinic on October 28, 2019. Ex. 9 at 70. The note documenting this appointment indicates that Petitioner "was on light duty for [seven] months." *Id.* It was further noted that although Petitioner "improved with physical therapy . . . [she] seems to have hit a plateau . . . conservative forms of multidisciplinary therapy including physical therapy and a Cortizone [sic] injection have been tried and have failed to alleviate the pain." *Id.*

- On December 4, 2019 (approximately fourteen months post-vaccination), Petitioner returned to Dr. Buss at Sports and Orthopaedic Specialists for her left rotator cuff impingement syndrome. Ex. 7 at 12. Petitioner reported "that she is over 95% better than her date of injury" and rated her pain as a two-to-three on a ten-point pain scale. *Id.* Although improvement was noted, Dr. Buss also explained that Petitioner "has mild residual pain . . . I recommend that she continue with her home exercise program and finish her acupuncture sessions." *Id.* at 13.

- Petitioner completed six sessions of acupuncture between November 6, 2019 and January 30, 2020. Ex. 9 at 5-52.

- Petitioner was examined by P.A. Miskec on February 5, 2020. Ex. 12 at 36. Petitioner reported "further progression with shoulder function and pain. Does note increased ache with repetitious motions and if she rests her arm in one position for too long, but her position at work does not require either . . . so she is able to work within her restrictions with no issues." *Id.*

6

Case 1:20-vv-00777-UNJ   Document 45   Filed 08/12/22   Page 7 of 8

- Petitioner was again examined by P.A. Miskec on March 13, 2020. Ex. 12 at 11. P.A. Miskec recounted that Petitioner's return to work had been discussed on February 5, 2020. *Id.* It was noted that Petitioner "states during this trial period, she did sustain flares in her shoulder with no restrictions and requests permanent no repetitious-type restrictions." *Id.*

- On April 16, 2020, Petitioner averred that she was no longer treating her left shoulder injury because she has reached maximum medical improvement. *Id.* at 9.

The case record overall establishes that Petitioner experienced a mild-to-moderate shoulder injury which was serious enough for her to promptly seek medical care, but only required relatively conservative (and consistent) treatment for a little over one year. Petitioner only underwent one x-ray, one MRI, and one cortisone injection – and never required surgery. Moreover, Petitioner only attended eleven sessions of physical therapy and six sessions of acupuncture. Although Petitioner was not consistently asked to rate her pain, on November 6, 2018 (around three weeks post-vaccination), she reported that it ranged between a three and a seven on a ten-point pain scale. Petitioner's condition was improving until the early spring of 2019 (almost five months post-vaccination) – at which point she began to regress. But, by December 4, 2019 (approximately fourteen months post-vaccination), Petitioner reported that she was "over 95% better" and indicated that her pain ranged between two and three on a ten-point pain scale.

Another factor that is considered in awarding pain and suffering is the effect that Petitioner's shoulder injury has had on her professional life. I note that due to the nature of Petitioner's work as a registered nurse, she was unable to work in the immediate aftermath of her injury – and, when she did return to the workplace, Petitioner was faced with weight and activity restrictions. In her affidavit, Petitioner states that she was eventually asked to find another job. I give some weight to these contentions, while comparing them to the overall medical record.

Respondent argues that the above-described course is similar to the petitioner in *Rayborn v. Sec'y of Health & Human Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000 in pain and suffering). While I agree that *Rayborn* represents a reasonable comparable in many regards, I find the facts of Petitioner's case to be more severe. I also note that the petitioner in *Rayborn* did not seek treatment for her injury until approximately four months after vaccination. Additionally, the duration of Petitioner's injury and treatment course exceeds what the *Rayborn* petitioner experienced (only nine months). *Id.*

However, the $95,000.00 sum requested by Petitioner is itself a bit high. Petitioner

7

maintains that this case is comparable to cases between $85,000.00 and $130,000.00. However, I consider these cases to have involved aggravating circumstances (such as a limitation of treatment options due to pregnancy), or greater severity and/or duration than in this case.

Accordingly, balancing the length of Petitioner's mild-to-moderate SIRVA injury and the professional hardships that arose as a result of her injury against her overall course, and considering arguments presented by both parties at the hearing, a review of the relevant caselaw, and the written record, I find that $75,000.00 in total compensation for actual pain and suffering is reasonable in this case.

## IV.    Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $<u>75,000.00</u>, for her actual pain and suffering in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[3]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.